LEMAY *v.* STATE OF INDIANA

[No. 30,243. Filed May 15, 1963. Rehearing denied January 22, 1964.]

*Harvey L. Fisher, Bernard C. Craig* and *Craig & Craig,* of counsel, all of Brazil, for appellant.

*Edwin K. Steers*, Attorney General, and *William D. Ruckelshaus*, Assistant Attorney General, for appellee.

JACKSON, C. J.—On the evening of June 30, 1961, one Manson Lemay was shot to death by appellant at their home on Central Avenue in the City of Brazil, Clay County, Indiana, as the aftermath of a prolonged drinking party. Appellant was charged, by indictment filed in the Circuit Court of Clay County, Indiana, with the crime of murder in the first degree. To the indictment appellant entered a plea of not guilty, and interposed the defense of self-defense. Trial was had by jury. The jury returned a verdict of guilty, and recommended the imposition of the death penalty. Judgment was entered on the verdict in conformity therewith; appellant filed his motion for a new trial, such motion was overruled and appellant perfected this appeal.

The motion for a new trial contains three grounds:

1. The verdict of the jury is not sustained by sufficient evidence.

2. The verdict of the jury is contrary to law.

3. The court erred in refusing to give certain numbered instructions requested by appellant. [This ground was waived by appellant in his brief, and the questions as to instructions are not here considered for that reason.]

Appellant's assignment of errors contains nine specifications, and omitting formal parts thereof reads as follows:

"1. The Court erred in overruling Appellant's Motion for a New Trial.

"2. The verdict is contrary to law.

"3. The corpus delicti was not sustained by sufficient evidence.

"4. The evidence was not sufficient to overcome the defense of self defense by proving the crime charged beyond a reasonable doubt.

"5. The evidence was not sufficient to establish 'premeditated malice' beyond a reasonable doubt.

"6. The Court erred in reading to the jury that part of preliminary instruction which reads 'or in the perpetration of or attempt to perpetrate a rape, arson, robbery or burglary, kills any human being is guilty of murder in the first degree.'

"7. The Court erred in giving to the jury preliminary instruction number 17.

"8. The Court erred at the close of all the evidence in giving to the jury instruction Number 34.

"9. The Court erred in admitting in evidence State's Exhibits 1-2-3-4-5-6-7-8-9-10 separately and severally."

Appellant in his brief waives specifications six, seven and eight, and such specifications are not here considered. Specifications 2,3,4,5 and 9 are not independent assignments of error, but should have been included in the motion for a new trial, not having been included therein they cannot be considered.

The factual situation leading up to the death of Manson Lemay may be briefly summarized as follows: The brothers, Manson Lemay and appellant, Clem Lemay, together with one Thomas Knapp had been engaged in a drinking party at the homes of decedent and appellant for several days preceding the death of Manson Lemay. The evidence is to the effect that Manson Lemay was a strong, vigorous man, thirty-nine years of age, six feet in height and weighing 175 or 180 pounds at the time of his death; appellant at that time was fifty-nine years of age, five feet ten inches tall, weighed 137 pounds, had his right arm amputated, had lost the toes on his left foot and had had a series of abdominal operations losing most of his stomach, and had been

sewed up with copper wire which was uncapped, and with the application of pressure caused him to suffer pain.

It further appears from the record that shortly before the homicide Thomas Knapp had left the scene to go home. It appears from the record that there was one witness to the shooting, a neighbor, Mrs. Alice Pierce. The evidence is uncontradicted that Manson Lemay was shot two times with a single shot Remington bolt action 22 caliber rifle, the first shot entering his chest penetrating the lower part of his heart, going entirely through it from side to side, and going through his lung; the second shot, from the same rifle, being fired through the back of Manson Lemay's head. Medical evidence adduced at the trial was to the effect that either shot would have caused death.

Appellant claimed that he shot his brother in self defense while Manson was choking him as he stood beside the entrance to the house and while Manson was hitting him in the abdomen in the vicinity of the wire stitching. Appellant testified that "I reached inside, pulled the door back and reached inside, held the door with this crippled arm, reached inside and picked up my rifle. I said 'Mans, don't bother me any more. I'm too near smothered to death.' He said, 'I'll take that gun away from you and I'll work you over with your own gun.' I let him come as close as I figured I . . . until I knew he could probably grab the rifle barrel and I shot him the first time . . . when he fell to the ground I shot him the second time."

Mrs. Pierce testified that she saw the brothers facing each other with Manson having hold of the rifle barrel, that the decedent went down to the ground pulling appellant down with him, and that appellant got up, pulled the gun free and walked to the house.

The indictment here charged appellant with the crime of murder in the first degree. In order to sustain a verdict of guilty, the burden is upon the State of Indiana to establish by evidence of probative value beyond a reasonable doubt that the death resulted from premeditated malice. *Heglin* v. *State* (1957), 236 Ind. 350, 355, 140 N. E. 2d 98; *Everett* v. *State* (1935), 208 Ind. 145, 149, 195 N. E. 77; *Aszman* v. *The State* (1890), 123 Ind. 347, 24 N. E. 123.

Black's Law Dictionary, 4th Ed., p. 1343, defines PREMEDITATION as follows: "The act of meditating in advance; deliberation upon a contemplated act; plotting or contriving; a design formed to do something before it is done. *State* v. *Spivey*, 132 N. C. 989, 43 S. E. 475; *Parker* v. *State*, 24 Wyo. 491, 161 P. 552, 554."

In order to sustain the conviction of appellant, it was incumbent upon the State to prove premeditation as well as the death of Manson Lemay. Evidence of probative value establishing such premeditation beyond a reasonable doubt is not in the record, on the contrary, there is uncontradicted evidence that immediately prior to the shooting appellant had purchased ice cream for his companions and one or more of the neighborhood children.

We have heretofore said:

"... In order that there may be such premeditated malice as will make a killing murder in the first degree the thought of taking a life must have been consciously conceived in the mind, the conception must have been meditated upon, and a deliberate determination formed to do the act." *Everett* v. *State* (1935), 208 Ind. 145, 149, 195 N. E. 2d 77.

From the record before us we are of the opinion that on the question of premeditated malice, the uncontra-

dicted evidence does not sustain the judgment of conviction of murder in the first degree, and that the verdict of the jury is contrary to law.

Judgment is reversed, and said cause remanded with instructions to sustain appellant's motion for a new trial.

Other questions presented are not apt to arise on a new trial and are not here determined.

Myers, J., concurs; Achor, J., concurs in result; Arterburn and Landis, JJ., dissent.

NOTE.—Reported in 190 N. E. 2d 189.