**Edward L. HENDERSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1178S267.**

Supreme Court of Indiana.

Sept. 27, 1979.

Nile Stanton, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Edward L. Henderson was convicted, after a trial by jury, of first-degree murder, in the Lake Superior Court, Criminal Division, and was sentenced to life imprisonment on November 7, 1974. His conviction was appealed to the Indiana Supreme Court and was affirmed. *Henderson v. State*, (1976) 264 Ind. 334, 343 N.E.2d 776. On February 2, 1978, appellant filed a petition for post-conviction relief. After some extended pleading procedures and hearings, the court, on March 29, 1978, entered its findings of fact and conclusions of law, finding that Henderson had failed to establish any ground for relief and that he had

waived all rights to establish grounds for relief on the specifications he assigned in his petition. Appellant's motion to correct errors was overruled by the court and this appeal followed.

Four issues are raised in this appeal based on alleged errors in the rulings of the trial court concerning the selection of the jury, prosecutorial comments, the giving of an instruction and the cumulative impact of the above alleged errors.

## I.

Appellant attempted to raise the issue of the selection of his jury at his post-conviction hearing based on a claim of a statistically significant disparity between the number of black prospective jurors and the number of blacks in the county. He claimed that this resulted in his jury failing to be racially reflective of the population of the county. Appellant had placed into evidence the entire proceedings of the original trial. This entire record was before the judge in the post-conviction hearing. The court found on the basis of that record that the make-up of the prospective jurors and the selection of the jury by the parties was not questioned or objected to in any way by appellant at his original trial, was not raised in his motion to correct errors or in his appeal to the Supreme Court. On the basis of this record, the trial court found that the appellant had waived this issue as a basis for post-conviction relief.

At the post-conviction hearing counsel for appellant made an offer to prove in which he proposed calling a statistical expert who allegedly would show that by examining the order book entries of the Clerk of Lake County and showing the names and addresses of all petit jurors from 1969 to 1974, together with the geographical location of their residence, their race and other data, that the odds against having the racial composition of the jury pool for Henderson's specific case by chance alone was 10,000 to 1. The court refused this offer and refused any further testimony on the issue on the grounds that the petitioner had waived it. The appellant does not question the accura-

cy of the record. He admits that no objection was made nor any question raised before the trial court, in the motion to correct errors or in the appeal taken to this court.

■ We have previously held that the purpose of the post-conviction remedies is to give the appellant an opportunity to raise issues that were unknown or unavailable to him at the time of his original appeal. We stated in *Dull v. State*, (1978) Ind., 372 N.E.2d 171, 173–4, "Where the defense of waiver is raised we have already noted that a petitioner must then present some substantial basis or circumstance which would satisfactorily mitigate his failure to pursue or perfect a remedy through normal procedural channels, *i. e.*, rebut the legal validity of the waiver defense." This language was taken from *Langley v. State*, (1971) 256 Ind. 199, 267 N.E.2d 538. Since the issue of the make-up of the jury and its selection processes was apparent and available to the appellant at the time of his trial, his motion to correct errors, and his appeal to this Court, and appellant did not raise it, the trial judge properly found that he had waived this issue in the post-conviction proceeding.

## II.

Appellant's next allegation of error concerns prosecutorial statements. The appellant points out that during the trial while defense counsel was cross-examining a State's witness, the prosecuting attorney objected to a question and made the statement, "There is no evidence of self-defense in this case." During final argument to the jury, the prosecutor made the statement, "There is no evidence indicating that the defendant did not premeditate upon this." It is appellant's contention that these statements prejudiced Henderson's right to refrain from testifying at his trial, and that they referred to his failure to testify and amounted to improper comments upon such failure.

Again the record shows that the defendant made no objection to either of these statements at the time nor did he move the court to have them stricken or to admonish

the jury to disregard them nor did he move for a mistrial on the basis of their prejudicial effect. Nothing about these statements was raised in the motion to correct errors nor on the appeal to this Court. The State again raised the defense of waiver on this issue and the appellant countered by claiming that the trial judge has an affirmative duty to protect the defendant from improper prosecutorial comment relating to the defendant's failure to testify and that therefore, since the court did not *sua sponte* take action, there is fundamental error presented even though the defense did not object to these statements or raise this issue as error prior to this appeal.

 Although appellant's basic proposition is correct, it does not apply to this situation. Fundamental error is error that is so prejudicial to a defendant's rights that he could not have had a fair trial. If it appears that adhering to the normal rules of appellate procedure would result in the waiver of an error which is so harmful that it operates to deny the appellant fundamental due process, this Court may by-pass those rules. *Blow v. State*, (1978) Ind., 372 N.E.2d 1166. *Cf. Teague v. State*, (1978) Ind., 379 N.E.2d 418. Here, appellant is claiming that the trial judge should have, *sua sponte*, admonished the prosecutor to refrain from these statements and should have instructed the jury to disregard them. A trial judge is not required to take an active part in the trial of the cause to assist or to override counsel in the strategies employed in examining witnesses, objecting or failing to object and in generally managing and directing the lawsuit. It is the duty of a trial judge to preside in a strictly impartial manner and to refrain from undue interference and participation in the proceedings. *Brannum v. State*, (1977) Ind., 366 N.E.2d 1180.

 The comments of the prosecutor made no reference to the appellant's failure to testify. Taken in context the first comment occurred as follows:

Q. Did he (Brady) have arguments with any number of people frequently?

BY MR. TOOMEY:
Objection your Honor. There is no evidence of self-defense in this case.

BY THE COURT:
What is the ground of your objection?

BY MR. TOOMEY:
I have stated it your Honor. Irrelevancy."

The second comment occurred in final argument and focused on the element of premeditation as follows:

"He left the apartment, Brady was gone already as was the victim and when Gayle went downstairs after the Defendant left, he was gone and no where in sight and nobody saw him until he came back from wherever he went, but this time with a rifle.

Was there any motive that arose during this lapse of time, this one hour after these threats, after the argument was? There is no evidence indicating that the Defendant did not pre-mediate upon this.

In other words, that shooting, the very fact that he came back with the rifle shows that he did pre-mediate the shooting."

These comments do not rise to the level of fundamental error so prejudicial that the defendant could not have had a fair trial and that would require a trial judge to act *sua sponte* in response to them. The trial court properly found that appellant had waived his right to present this issue in the post-conviction relief proceeding.

### III.

 Appellant alleges error in the giving of Instruction No. 3, claiming it was incomplete and mandatory. Final Instruction No. 3 reads as follows:

"In order to sustain a conviction for first-degree murder it is incumbent upon the State to prove premeditation as well as death, premeditation being defined as the act of meditating in advance; deliberating upon a contemplated act; plotting or contriving; a design formed to do something before it is done."

The record shows that this instruction was tendered by the defendant as one of his requested instructions and was given by the court. He now characterizes it as a mandatory one, purporting to give all of the elements of the crime of murder and omitting the essential element of malice and claims that it was therefore, error of fundamental magnitude to give this instruction. Appellant failed to object to the giving of this instruction at the trial and has therefore waived this issue. *Dull v. State*, (1978) Ind., 372 N.E.2d 171.

Furthermore, this instruction cannot be characterized as a mandatory one that purported to give all of the elements of the crime and to direct the jury to find the defendant guilty if they found the element of premeditation. This was merely an instruction on the element of premeditation. Instructions are to be read together. *Tewell v. State*, (1976) 264 Ind. 88, 339 N.E.2d 792. Among the other final instructions the court gave the following Instruction No. 2:

> "The indictment in this case charges the defendant with the crime of murder in the first degree which crime insofar as it is applicable to the charge in this case is defined by statute in Indiana as follows: Whoever purposely and with premeditated malice kills any human being is guilty of murder in the first degree and on conviction shall be imprisoned in the state prison during life."

And defendant's Instruction No. 4:

> "Premeditated malice encompasses intent, consciously conceived to take life as well as opportunity to reflect on such decision."

■ Instruction No. 3 was an instruction based on a definition of premeditation in *Lemay v. State*, (1963) 244 Ind. 652, 190 N.E.2d 189 and did not purport to be a complete definition of murder, nor was it mandatory in nature. The trial court properly found that the appellant had waived this issue and that he had established no grounds for relief in the post-conviction proceedings on this issue.

## IV.

The appellant finally alleges that the cumulative effect of all of the above alleged errors denied him a fair trial. Since we have found that the trial court acted properly in each of the above specifications, the cumulative effect of all of them presents nothing further for us to consider.

We affirm the judgment of the trial court.

GIVAN, C. J., HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurring in part and dissenting in part with separate opinion.

DeBRULER, Justice, concurring and dissenting.

In this case we are called upon to review the trial judge's determination that appellant failed to exercise his right to challenge the systematic exclusion of black persons from the jury that tried him at trial and on his first motion to correct errors, and thereby waived that right. Indiana Code § 33–4–5.5–16 required appellant to object to the jury selection process prior to trial in a motion to dismiss. This was not done. At his post-conviction hearing the State relied upon the defense of waiver and therefore in light of the clear record showing the failure to object, appellant at the very minimum at that point should have been granted an opportunity to present evidence to show that he had not affirmatively waived the right to challenge the composition of the jury by failing to object. *Dull v. State*, (1978) Ind., 372 N.E.2d 171. The trial court erroneously refused to permit appellant to present evidence on the waiver issue. Appellant then made an offer to prove that he and his trial counsel would testify that prior to and during trial appellant, a Negro, drew his counsel's attention to the racial imbalance in the group of prospective jurors and continued to do so during trial and that his repetitious complaints on the subject created a serious conflict with his counsel that resulted in his counsel's request during trial to withdraw from the case. Consequently I would affirm the trial court on parts II, III,

IV and V, and reverse on part I and remand for a waiver hearing.