William L. SUGGS, Appellant,

v.

STATE of Indiana, Appellee.

No. 780S220.

Supreme Court of Indiana.

Dec. 2, 1981.

Robert F. Hellman, Barbara Coyle Rennolet, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

The appellant, William L. Suggs, was charged by an information with murder, a felony, Ind.Code § 35–42–1–1, and robbery, a class A felony, Ind.Code § 35–42–5–1. The State sought the death penalty pursuant to Ind.Code § 35–50–2–9. After a jury trial, he was convicted on the murder charge and sentenced to forty years' imprisonment. This appeal follows the denial of the motion to correct errors.

I.

The trial court denied appellant's motion to suppress evidence obtained as the result of his arrest. Appellant claims that this was error because the arrest was unlawful since it was made in the absence of a warrant, and without probable cause. The evidence obtained was a mug-shot of him which was the basis, he claims, of an in-court identification, and a newspaper clipping found on him which reported the killing with which he was charged.

Appellant contends that the information that the police relied upon to arrest him did not amount to "facts and circumstances known to the arresting officer [which] would warrant a man of reasonable caution and prudence in believing that the accused had committed ... a criminal offense." *Gaddis v. State*, (1977) 267 Ind. 100, 368 N.E.2d 244. The arresting officer, Basham, had overheard part of a conversation between Lance DeBouse, who was a suspect in the killing, and another officer investigating the case, in which DeBouse stated that appellant had done the killing. Basham reported DeBouse's statement to his superior officer, Lt. Presnell, who then ordered Basham to make the arrest. Appellant argues that there was no basis for evaluating the reliability of the information and the credibility of the informant as required by our cases.

■ Whether there is probable cause for police to make an arrest without a warrant depends not upon the knowledge of the arresting officer alone, but upon the collective information known to the law enforcement organization as a whole. *Benton v. State*, (1980) Ind., 401 N.E.2d 697, 699. Lieutenant Presnell testified at the hearing on the motion to suppress that he had participated in the investigation to the extent of dispatching officers on different assignments, including assigning two officers to look for Lance DeBouse who was a suspect.

For the purpose of establishing probable cause to arrest without a warrant, the reliability of the information provided by an informant whose statements may be self-serving must be established by reference to facts and circumstances which indicate that the information is trustworthy. *Pawloski v. State*, (1978) 269 Ind. 350, 380 N.E.2d 1230, 1233. The collective knowledge of the police included the facts that Lance DeBouse was a participant in events leading up to a point shortly before the shooting,

and that in making his statement he exposed himself to charges for serious crimes.

"People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *United States v. Harris*, (1971) 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723.

DeBouse's admissions against penal interest and the fact that he was a direct participant in events leading to the shooting were sufficient to establish his trustworthiness for the purpose of probable cause to arrest. There was no error in denying the motion to suppress.

## II.

■ Appellant made a motion to dismiss the case against him on the ground that the Vigo Circuit Court lacked jurisdiction over criminal cases. This motion was denied and he claims error, citing Rule 1 of the Rules of Practice and Procedure for the Vigo Superior Court, Vigo Circuit Court, and Vigo County Court which provides:

"[A]ll cases—civil, criminal, probate or other, except juvenile—shall be filed in the Vigo Superior Court. . . . "

The contention that this case came before Vigo Circuit Court in violation of this rule has no merit. Rule 1 also provides the following:

"The Vigo Superior Court shall be comprised of three (3) divisions as follows:

Division 1—Judge Harold J. Bitzegaio, presiding.

Division 2—Judge Charles K. McCrory, presiding.

Division 3—Judge Hugh D. McQuillan, Vigo Circuit Court, presiding as Judge of the Vigo Superior Court, Division 3."

And it also provides that "[t]he Court Administrator shall assign criminal cases to one of the three divisions of Superior Court." Judge McQuillan, Judge of Vigo Circuit Court, sitting as Judge of Vigo Superior Court, had jurisdiction of the case and did not err in denying the motion to dismiss.

## III.

The trial court, over defense objection, permitted State's witness, Floyd Reeves, to testify that on the same night as the killing, he observed a whispered conversation between appellant and Lance DeBouse. He did not hear what was said. This testimony served to corroborate testimony by DeBouse that appellant told him that in the course of robbing the occupants of a car, his shotgun discharged.

Appellant claims that a memorandum containing the substance of Reeves' testimony was subject to a defense discovery order and was intentionally concealed. The court erred in failing to strike Reeves' testimony, appellant contends.

■ This contention has no merit. While it is clear that the State is not permitted to conceal evidence and then surprise the defense with it at trial, *State ex rel. Keller v. Criminal Court of Marion County*, (1974) 262 Ind. 420, 317 N.E.2d 433, no surprise can be claimed here since Reeves' name was on the State's list of witnesses and the defense deposed him prior to trial. Furthermore, the court recessed to permit the defense to depose Reeves further on the subject of the testimony he was to give.

The court did not err in denying the motion to strike Reeves' testimony.

The trial court also permitted, over defense objection, State's witness, Fred J. Daffer, to testify as a rebuttal witness. Daffer was called to rebut the testimony of defense witness Martin Ward. Ward had testified that immediately after the shooting incident, which took place in front of his house, he saw a white man carrying what appeared to be a rifle or shotgun. Appellant is black, and this testimony therefore was exculpatory. Daffer testified that he was living directly across the street from the place where the incident occurred and that upon hearing the shooting, he ran out to the street. On learning that someone

had been shot, he said that he attempted to stop the victim's bleeding. He also said that he sent his wife back into his house to get a shotgun because he was afraid that the person who did the shooting might still be nearby. This testimony rebutted the testimony that a white person was responsible for the shooting.

■ The defense moved for a mistrial, or in the alternative for an order striking Daffer's testimony, because although the State had known of this information for about one week, it did not disclose it to the defense, as required by the discovery order. The record reveals that the trial court denied the motion for mistrial and in the alternative for an order to strike because it was not timely made. An objection to testimony must be made at the time the evidence is offered. *Pavone v. State*, (1980) Ind., 402 N.E.2d 976, 979. Here, no objection was made until after Daffer completed his testimony and was excused as a witness. The issue is not before us on appeal.

## IV.

The trial court denied a pre-trial defense motion to suppress evidence seized in the course of a search of appellant's apartment pursuant to a search warrant. At trial, over defense objection, the State introduced Exhibit 1, a .20 gauge shotgun and a box of .20 gauge shotgun shells seized during the search. Appellant contends that the exhibit was improperly admitted because the search warrant was not based on probable cause.

The affidavit of the police officer was based on statements made by Lance De-Bouse. Appellant contends that the affidavit failed to show underlying facts and circumstances sufficient to enable a magistrate to judge the validity of the informant's information and failed to support the claim that the informant was credible or the information reliable, as required by *Aguilar v. Texas*, (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. This standard is incorporated in Ind.Code § 35–1–6–2, which provides in pertinent part as follows:

"(a) Except as provided in subsection (c) of this section, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit, particularly describing the house or place to be searched and the things to be searched for, or particularly describing the person to be arrested, and alleging substantially the offense in relation thereto, and that the affiant believes and has good cause to believe that such things as are to be searched for are there concealed, or that the person to be arrested committed said offense, and setting forth the facts then in knowledge of the affiant or information based on credible hearsay, constituting the probable cause. When based on hearsay, the affidavit shall contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished."

The affidavit for the search warrant set out the following facts:

"1. On September 27, 1979, Uniformed Officers of the Terre Haute Police Department were sent to the area of 15th and Orchard, Terre Haute, Vigo County, Indiana on a report of a shooting. Upon their arrival, they found a Kathee O'Donnal suffering from a shotgun wound to the right side of her neck. This subject subsequently died from this injury.

2. Further investigation revealed that two Black males, after taking 130.00 dollars from Tom Sponaugle, Kathee O'Donnal and Donald O'Donnal, agreed to return to them ¼ pound of marijuana. A short while later, one Black male returned and after directing the driver of the car, Tom Sponaugle, to the area of 15th and Orchard, where the shooting took place. This Black subject has been identified as William L. 'Monty' Suggs as the subject that did the shooting.

3. The investigation revealed that the money transaction occurred at the southeast corner of 14th and Oak after the O'Donnal couple and Sponaugle met the Blacks at the Moo Wa Lounge at 13th Street and Crawford. After the money

changed hands at 14th and Oak and prior to the shooting at 15th and Orchard, the Black Males left the vehicle and went to a house later found to be 506 South 14th Street. This house is the residence of William Lamont Suggs and Rita Allen, who is the live-in girlfriend of Frank E. Suggs. William Suggs lives in the north half of the house and Rita Allen and Frank Suggs live in the south half.

4. After the money had changed hands, it was found that William Lamont Suggs and Lance DeBouse had been the black males who had entered this residence. They left through the back door and returned to the Moo Wa Lounge where Frank Suggs took them back to this residence. William Lamont Suggs went back into the residence and got some shotgun shells for a shotgun which they had in Frank Suggs' car. He then went back to the vehicle which Tom Sponaugle, Kathee O'Donnal, and Donald O'Donnal were in and directed them to the area of 15th and Orchard. Before going to the car which the three victims were in, William Lamont Suggs, told Frank Suggs to follow him for the purpose of robbing the victims of their money. We learned this information from Lance DeBouse.

5. Following the shooting of Kathee O'Donnal Frank Suggs and William Lamont Suggs contacted Muriel Allen and Frank Suggs and William Suggs had the shotgun in their possession. We also learned this from Lance DeBouse.

6. Lance DeBouse told us that the white 1964 Pontiac with a red hood and red fenders which belongs to Frank Suggs had been used in the commission of the killing of Kathee O'Donnal.

7. At 3:20 a. m. on 9–28–79 the undersigned went by the address of 506 South 14th Street Terre Haute, Vigo County Indiana and at that time we observed a 1964 White Pontiac with a red hood and red fenders sitting in front of that address and we observed lights on in the North part of the house, there was also lights on in the South part of the house and I observed a subject looking out a door window of this unit at this time.

8. Affiant feels that Lance DeBouse is a reliable and credible person in that he spoke from personal knowledge and observation and his demeanor in speaking did not indicate in any way that he was fabricating the story.

9. Affiant also learned from Lance DeBouse that William Lamont Suggs told him personally that he, Suggs, did kill the girl during a robbery.

10. Lance DeBouse stated several items in his formal statement that we have substantiated during the course of this investigation."

■ We take paragraph 4 above to mean that Lance DeBouse provided all the information in the preceding paragraphs. Paragraphs 4 and 8 support the conclusion that the source, DeBouse, was present at the time of the occurrence of many of the events which he described. These events included among others the dealing at the Moo Wa Lounge, the visits to appellant's apartment, the retrieval of shotgun shells from appellant's apartment, the transportation of the shotgun and shells in appellant's car, the planning of the robbery, and the statement of appellant that he had killed the girl during the robbery. It is evident, therefore, that the source, DeBouse, had firsthand knowledge of the events he described to the officer who made the affidavit. The requirement that there be a factual basis for the information furnished to the maker of the affidavit is satisfied by these allegations.

We also take the above-described paragraphs in conjunction with paragraph 10 to constitute a sufficient statement as to the credibility of the source DeBouse. DeBouse had personal knowledge of the incidents, and the affiant was able to substantiate "several items in [Lance DeBouse's] formal statement." According to paragraphs 6 and 7 the description of the car used in the shooting was substantiated by the police during their investigation. There was no error in denying the motion to suppress.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.