Jeffrey L. MURRAY, Appellant,

v.

STATE of Indiana, Appellee.

No. 583 S 185.

Supreme Court of Indiana.

June 28, 1985.

Gregory L. Caldwell, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Jeffrey L. Murray was found guilty by a jury in Hamilton Superior Court of the crimes of [Count I] dealing in cocaine, a class B felony, and [Count II] maintaining a common nuisance, a class D felony. He subsequently was sentenced by the trial court to a term of sixteen years imprisonment on Count I and to four years imprisonment on Count II, both sentences to run concurrently. Seven issues are raised for our consideration in this direct appeal as follows:

1.  denial of Appellant's motion to dismiss;

2.  error in permitting witness Essex to testify;

3.  errors in the giving and refusing of final instructions;

4.  sufficiency of the evidence;

5.  admission into evidence of State's Exhibits 8, 9, and 12;

6.  error occurring during the testimony of witness Sargent; and

7.  cumulative effect of errors requiring reversal.

The evidence adduced during trial shows that on November 29, 1981, Gregory Sargent wished to celebrate his birthday by buying some cocaine. Sargent, Michael Arnold and a girl named "Sweetie" borrowed a car and drove to the Harbortown Apartments in rural Hamilton County to buy cocaine from Appellant Murray since Sargent had purchased cocaine from Appellant on at least two prior occasions. Sargent and his companions went into the apartment where Appellant lived with at least two other people and Appellant weighed out and sold to Sargent a substance he represented to be cocaine. Sargent and his companions then returned to Indianapolis and tried the cocaine but found that it did not have the effect it normally did so they drove back to the apartment to seek recompense. When Sargent, Arnold, and "Sweetie" arrived back at the apartment, Hillman, a resident who had been in the apartment earlier when Sargent first came, opened the door. Sargent argued with Hillman about the disappointing quality of the cocaine but no settlement was reached. Arnold joined the haggling but still without success. Sargent then picked up a pistol from the top of the television set and, in Sargent's words, "it became a robbery."

Appellant then gave to Sargent a brown bottle from his person that he represented to be cocaine, telling Sargent that more cocaine was stashed in the refrigerator and kitchen cabinet. Sargent fetched plastic bags of substance from these locations. Sargent and Arnold then tied up the persons they had found in the apartment and prepared to leave but, when Arnold opened the front door of the apartment, he saw a policeman in the hallway so he shut and locked the front door and told the others that the police were outside. The police had been called to the area by the report of a purse-snatching in front of the apartment building. One of the police, however, noticed a window open and the screen out in Appellant's apartments so he investigated further. Looking in, he saw two people bound and gagged in the bedroom inside. He summoned more police to the scene and when the police entered the hallway, they saw a man open and then shut the door into the apartment. Meanwhile, when Arnold announced inside the apartment that the police were outside, Appellant pleaded "cut me loose, cut me loose, so I can flush it." Sargent cut Appellant's arms loose, leaving his feet still tied. In the process, Sargent accidentally cut Appellant on the arm. Sargent and Arnold laid the robbery loot on the floor and Sargent stuffed one of the plastic bags of loot between the cushions of a sofa. Police broke into the apartment and found Appellant, Arnold, Sargent, and Greg Anderson in the living room of the apartment. Appellant thereafter consented to the search of the apartment by police and a number of items were seized including, *inter alia*, a plastic bag containing Mannitol found in front of the TV set on the floor. Mannitol is a substance used to "cut" or dilute cocaine. A plastic bag discovered stuffed between the cushions of the sofa was found to contain 30.2 grams of a white powder that was 7.6% cocaine. A pistol and kitchen knife were found on the chair in which Arnold was sitting when the police entered. Two scales were seized, one of which was of the type used by drug dealers to weigh out individual portions of drugs. A brown bottle containing cocaine was found in Sargent's pocket and a folded playing card found inside Arnold's stocking also contained traces of cocaine.

## I

Appellant first claims that the trial court erred by denying his motion to dismiss based on the allegation that Appellant was granted immunity from prosecution in exchange for his testimony in the cause of *State of Indiana v. Michael Arnold.* [Hamilton Superior Court Cause No. 2SCR81–078]. Appellant's unverified motion to dismiss specifically alleged that he was called by the State to testify against Michael Arnold in a robbery trial for Arnold's participation in the above described crimes. During such trial, Appellant claims he refused to testify but was ordered to by the trial court to testify based on a request by the State pursuant to Ind. Code § 35-6-3-1 (Burns 1979) [repealed effective September 1, 1982]. This statute provides that a witness can be ordered to testify:

> "If, but for this section the witness would have been privileged to withhold the answer given or the evidence produced, he shall not be prosecuted or subjected to penalty or forfeiture for or on account of any answer given or evidence produced...."

Although Appellant alleges there was a hearing before the trial court on his motion to dismiss and the trial court thereafter denied said motion, no record is provided to us showing such proceedings. Since it is the duty of a criminal defendant to provide a proper record for appeal so that an intelligent review of the issues may be made, Appellant has failed in that regard and we find a waiver. Examining Appellant's Brief further, however, we also find that he presents no appealable issue. His motion to dismiss does no more than claim that the procedure followed in the Arnold trial was improper since he was not given ample notice as to the need for his testimony, he was not furnished the questions he was expected to answer and, generally,

Ind.Code § 35–6–3–1 was not followed. The Arnold trial is not before us, however, and any errors made there are, of course, of no moment to Appellant's case. Appellant does not set out what questions were put to him and what answers he gave nor does he allege that he was questioned at all. He makes no claim that he was, or should have been, given immunity as to any facts that would incriminate him in this trial. There is, therefore, nothing presented which merits reversal on these grounds.

## II

After the jury had been selected and the State began its presentation of evidence, the prosecuting attorney advised the trial court and Appellant that the State wished to call William Essex as a witness for the State in their case-in-chief. Essex was to testify as an expert witness on drug trafficking. The State indicated that it had not previously recognized that such testimony was necessary but had just determined that such testimony could be helpful to the jury. Appellant objected to allowing Essex to testify based upon the fact that the prosecutor had not listed Essex as a witness on the list of witnesses filed by the State nor was his name endorsed on the information filed against Appellant. The trial court granted Appellant a recess to talk with such witness and then overruled his objection to the calling of this witness.

■ If properly discoverable evidence is revealed for the first time at trial, generally a defendant has the following two remedies: 1) a continuance, or 2) exclusion of the evidence. Exclusion of evidence, however, is usually invoked *only* when the State has blatantly and deliberately refused to comply with the court's discovery order. The usual remedy therefore is to allow the defendant a continuance in order to examine and meet the new evidence. *Hovis v. State,* (1983) Ind., 455 N.E.2d 577, *reh. denied; Sparks v. State,* (1979) 271 Ind. 419, 393 N.E.2d 151; *Reid v. State,* (1978) 267 Ind. 555, 372 N.E.2d 1149. This, of course, is what the trial court did here. There is neither allegation nor showing

that the State's actions here represented a blatant and deliberate refusal to comply with our discovery rules and it therefore was discretionary with the trial court to permit the testimony of witness Essex.

■ Appellant also raises issues in his Appellate Brief regarding the contents of Essex's testimony. The record shows that Appellant waived these errors, however, since he failed to object during the interrogation of Essex on any of these matters and, in fact, cross-examined Essex extensively. *Suggs v. State,* (1981) Ind., 428 N.E.2d 226, *reh. denied; McCraney v. State,* (1981) Ind., 425 N.E.2d 151. We find no error on this issue.

## III

■ Appellant next claims that the trial court erred by giving its final instruction No. 8 which tended to instruct the jury regarding Ind.Code § 35–48–4–1(1) (Burns 1985) describing the crime of "knowingly or intentionally" delivering cocaine. The record shows that Appellant made no objection to the trial court's final instruction No. 8 when the instructions were settled. Instead, Appellant waited until after the jury had begun to deliberate before he raised the question in an oral motion to dismiss. By failing to raise the issue when the instructions were settled, Appellant waived the possible error. *Jacks v. State,* (1979) 271 Ind. 611, 394 N.E.2d 166, *reh. denied.* Appellant also fails to show fundamental error on this issue as an examination of the entire record and all instructions given does not show error of such nature and effect as to deprive him of his right to a fair trial. *Roberts v. State,* (1981) Ind., 419 N.E.2d 803.

■ Appellant further claims that the trial court committed reversible error by giving the State's tendered instruction No. 2 which advised the jury that a defendant may be convicted as an accessory even though charged as a principal. This instruction was correct pursuant to Ind.Code § 35–41–2–4 (Burns 1985) and *Harris v. State,* (1981) Ind., 425 N.E.2d 154, and Appellant concedes the point. He also con-

cedes that the tendered instruction was a correct statement of the law pursuant to Ind.Code § 35–41–2–4. His argument therefore seems to be that there was insufficient evidence to show that Appellant had the drugs in question in his personal possession and was holding them for sale. The fact is that there was direct testimony establishing that Appellant himself was the one who sold these drugs. There also was evidence of others involved in the apartment at the time who participated in the sale and in the possession of the drugs and related paraphernalia found in the apartment. There, was, therefore, evidence in the record to justify the trial court in giving instruction No. 2 and we find no error.

Appellant also claims that his tendered instruction G was improperly refused by the trial court. This instruction would inform the jury that the circumstantial evidence must be of so "conclusive a character, and point so surely and unerringly to the guilt of the accused, as to exclude every reasonable hypothesis of innocence" pursuant to *Ball v. State*, (1980) Ind.App., 406 N.E.2d 305, 307. The record shows very clearly, however, that the evidence against Appellant here was not wholly circumstantial. Although there was some circumstantial evidence admitted, there was a great deal of direct evidence connecting Appellant with the commission of these crimes. The trial court also gave other proper instructions regarding the manner in which the evidence was to be weighed in order to find Appellant guilty.

Appellant further claims that the trial court erred in refusing to give his tendered instruction I which defined direct and circumstantial evidence. The record shows that the trial court's final instruction No. 17 fully and adequately instructed the jury on this subject and therefore there was no error in the trial court's refusal to give Appellant's tendered instruction I. *Richey v. State*, (1981) Ind., 426 N.E.2d 389. We find no error on this issue.

### IV

Appellant next claims that the evidence was insufficient to support the jury's verdict of guilty. In a sufficiency review, this Court looks only to the evidence most favorable to the State and all reasonable inferences drawn therefrom. If the existence of each element of the crime charged may be found therefrom beyond a reasonable doubt, then the verdict will not be disturbed. In such a review, we will not reweigh conflicting evidence nor will we judge the credibility of the witnesses. *Meiher v. State*, (1984) Ind., 461 N.E.2d 115.

Witness Sargent testified that Appellant sold him a substance that Appellant represented to be cocaine. When Sargent later returned claiming the substance was of an inferior quality, Appellant surrendered to Sargent a plastic bag and a brown bottle, both of which were shown by laboratory analysis to contain cocaine. Other witnesses testified to the same set of facts. The plastic bag contained 30.2 grams of a substance that was 7.6% cocaine. Also found in the apartment were items used for the dispensing and sale of illegal drugs including a bag of Mannitol—a substance used to dilute cocaine, two scales of the type used by drug dealers, a large quantity of "Baggies" and a bag sealer. The evidence clearly was sufficient.

### V

Appellant's next claim is that the trial court committed reversible error by permitting into evidence State's Exhibits 8, 9, and 12. Exhibits 8 and 9 were scales which weighed in grams and ounces, sometimes referred to as postage type scales, and which are commonly used in the weighing and dispensing of drugs by drug dealers. Exhibit 12 was a quantity of United States currency found on the floor in the middle of the room when police officers entered Appellant's apartment on the night of November 29, 1981. Appellant's objection to the admissibility of these items is that they are irrelevant and immaterial to the charges against him. An adequate foundation is laid for hard physical evidence if the items are identified by a witness and the items have relevance to the

issue of the case. *Dorton v. State,* (1981) Ind., 419 N.E.2d 1289. In addition to the direct evidence provided by the participants of the sale here, there was evidence by the police that after they happened to see some people in Appellant's apartment with their hands and feet bound, they were able to discern a scramble in the apartment to dispose of evidence. When they subsequently entered the apartment, they found quantities of illegal drugs as well as the scales in question and a rather large sum of money on the floor in the living room. These items, together with all of the other evidence and testimony in the cause, were relevant to show that Appellant was involved in the possession and sale of illegal drugs and their admission therefore was proper. No error is presented on this issue.

## VI

■ Appellant also claims that the trial court erred in permitting witness Sargent to testify that Appellant had sold Sargent cocaine. Appellant's objection seems to be based on the fact that Sargent was not an expert and therefore was not competent to testify as to whether or not his purchase from Appellant was cocaine. Moreover, Sargent testified that he did not get the desired result from the use of the substance sold to him by Appellant which would indicate that it was not cocaine. First, we note the evidence clearly showed that Appellant himself represented that the material in the plastic bag he sold to Sargent and that the material in the brown bottle he surrendered to Sargent was cocaine. The brown bottle was found in Sargent's possession by the police and it did, in fact, contain cocaine as established by subsequent chemical analysis. A plastic bag found in the apartment also contained cocaine. There was, therefore, much evidence that corroborated Sargent's testimony and his testimony was competent, particularly since Appellant himself represented that the substances he sold to Sargent were cocaine. *See Meiher, supra.* We find no error.

## VII

■ Finally, Appellant claims that even if, assuming *arguendo,* any one of the above errors he has asserted would be lacking in sufficiency to independently substantiate a reversal of his convictions or if it is determined that any of the errors are valid but harmless, the cumulative effect of all of the errors taken together is so prejudicial as to deny Appellant due process and thereby a fair trial. Since we find no reversible error in any of the specifications above set out, we also find that cumulatively they present no error. *See Henderson v. State,* (1979) 271 Ind. 633, 395 N.E.2d 224.

Finding no error, we affirm the trial court.

GIVAN, C.J., and PRENTICE, J., concur.

DeBRULER, J., concurs and dissents with separate opinion.

HUNTER, J., not participating.

DeBRULER, Justice, dissenting and concurring.

I.C. § 35–48–4–1 defining the crime of dealing in a narcotic drug provides:

"A person who:

(1) Knowingly or intentionally manufactures or delivers cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II; or

(2) Possesses, with intent to manufacture or deliver, cocaine or a narcotic drug, pure or adulterated, classified in Schedule I or II; commits dealing in cocaine or a narcotic drug, a class B felony.

Appellant was charged under the second paragraph of this statute with possession of cocaine with the intent to deliver it. For some reason undisclosed in the record, the trial court gave the jury its final instruction No. 8 which stated that appellant was charged with knowingly or intentionally delivering cocaine, the offense defined in the first paragraph of this statute. There was no similar instruction given which explained the character of the offense as

initially charged. The verdict form returned showed guilty of dealing, a form consistent with a charge under paragraphs (1) or (2).

This instruction was erroneous in that it presented a charge not made, and the giving of it constituted fundamental error, an error which robbed the proceeding of required fairness. Appellant was not notified through the charge, before trial that he should defend against a charge of knowing or intentional delivery. The conviction itself is now beclouded by the distinct possibility that the jury verdict rests upon the conclusion that appellant "delivered" the drug, contrary to instruction # 8, when he involuntarily surrendered the proven cocaine under threat of deadly force.

Accordingly, I would reverse the conviction for dealing in a narcotic drug and remand Count I for a new trial. However, I also vote to affirm the conviction for common nuisance pursuant to Count II.