## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 22 2020, 10:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Tyler E. Burgauer
Muncie, Indiana

Samuel J. Beasley
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert S. Flowers, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff,* | June 22, 2020 <br><br> Court of Appeals Case No. 19A-CR-2800 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Thomas A. Cannon, Jr., Judge <br><br> Trial Court Cause No. 18C05-1904-F6-351 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Robert Flowers was found guilty of battery on a public safety official, a Level 6 felony, and disorderly conduct, a Class B misdemeanor. The trial court sentenced Flowers to a total of eighteen months to be served in the Delaware County Jail. Flowers appeals his battery conviction, raising one issue for our review: whether alleged prosecutorial misconduct amounted to fundamental error denying him a fair trial on this count. Concluding Flowers has failed to prove fundamental error, we affirm.

# Facts and Procedural History

[2] In the early morning hours of April 17, 2019, Muncie Police Department officers were dispatched to a home on Streeter Avenue because a call had come in from "a male . . . who wasn't making a lot of sense [with] a female crying in the background." Transcript of Evidence, Volume 2 at 23. When officers arrived, they found a male, later identified as Flowers, in the middle of the street behaving very aggressively and yelling profanities. Despite efforts by the officers to "get Flowers to settle down [and] understand what exactly his side of the story was[,]" they "never figured out what the problem was." *Id.* at 26. They told Flowers to calm down and be quiet because he was being disorderly, but Flowers never quieted down. He "made comments about being handicapped and having one arm[,]" but then said he had "wooped [the] a\*\*es" of people inside the Streeter Avenue house and he would "woop [an officer's] mother f\*ckin a\*\*" as well. *Id.* at 27-28. Officers then placed Flowers in

handcuffs "before it got out of hand." *Id.* at 28. Once placed in a police vehicle for transport to the jail, Flowers remained agitated, was uncooperative, and continued to yell.

[3]     Because of Flowers' behavior, four correctional officers with the emergency response team met the vehicle at the jail to take custody of Flowers.[1] Per policy, everyone who comes into the jail is patted down and if the person has a non-driving felony charge, strip searched. However, Flowers continued to be combative with officers as they attempted to search him—tensing up, adopting a fighting stance, pulling away, and screaming. Officers therefore began to employ a series of progressive force efforts to restrain Flowers and obtain his compliance, including verbal commands, use of a pressure point, peroneal knee strikes to the side of the leg, and eventually, use of a taser.

[4]     Officer Clayton Combs warned Flowers that he would be tased if he did not comply with officer commands. Officer Combs' taser was not outfitted for projecting barbs from a distance so he moved toward Flowers to "drive stun" him. *Id*. at 169.[2] Before Officer Combs could make contact, Flowers punched him in the right side of his jaw. Officer Combs then stunned Flowers twice, once on the left side of his abdomen and once on his back side. A second officer deployed his taser from a distance and the barbs made contact with

---

[1] The emergency response team is trained to "take point on pretty much every situation" that is "not normal [or that] officers can't control[.]" *Id.* at 44.

[2] A "drive stun" is an electrical current discharged by direct contact between the taser and the person. *Id.*

Flowers' torso. Flowers fell to his knees. Officers ordered Flowers to lay on his stomach, but Flowers instead attempted to stand up. A third officer then fired two pepper ball warning shots[3] at the wall near Flowers and ordered him to get on the ground. Flowers initially refused, and the officer fired a third shot that hit Flowers' shoulder. Flowers then complied with commands to lie on his stomach and put his hands behind his back.

[5] Following the strip search, officers escorted Flowers to a holding cell where he again refused to comply with orders. Officers placed Flowers in a "figure four" leg lock so they could safely remove his handcuffs and exit the cell. *Id.* at 99.[4] Officers heard Flowers throughout the night yelling from the holding cell.

[6] The State charged Flowers with battery against a public safety official, a Level 6 felony (for hitting Officer Combs); intimidation, a Level 6 felony (for threatening an officer who responded to the original call); and disorderly conduct, a Class B misdemeanor (for making unreasonable noise in the street). At his jury trial, Flowers testified on his own behalf. He explained he has only limited use of his right arm due to an injury from a motorcycle accident. He claimed officers were "rough" and "very aggressive" with his damaged arm when they handcuffed him at the scene even though he told them about his injury. *Id.* at 199-200. He testified he was cooperative upon arriving at the jail

---

[3] Despite being described as pepper balls, the projectiles were actually filled with baby powder. *Id.* at 58.

[4] The "figure four leg lock" places a person's legs "in a criss cross pattern behind him, pushing towards the butt" so the person cannot "harm, spit, or kick officers." *Id.* at 96, 98.

except for repeatedly telling the correctional officers that his arm hurt. When told to put his hands on a counter for the pat down search, he was unable to raise his right arm to do so and they "threw me on the counter, *bam*, I mean [they] snapped my arm." *Id.* at 203. Flowers testified that once he was taken into the area where the strip search was to be conducted, "I was trying to comply, [but] they weren't giving me a chance to[.]" *Id.* at 205. He denied punching Officer Combs. And he testified about being tased:

> [Defense counsel]: So, when the barbs hit you, did that leave a mark?
> [Flowers]: Yes, it did, I remember them because . . . after it happened I still had [them] for a day [or] two, the nurse had to come pick them out of me.
> [Defense counsel]: Okay, and that, they were still there a couple days later?
> [Flowers]: A day later, yea.
> [Defense counsel]: Okay, and the nurse took care of that?
> [Flowers]: Yes.

*Id.* at 206. On cross-examination, the State came back to this claim:

> [Flowers]: They pulled four barbs out of me.
> [State]: Okay, and who pulled four barbs out of you?
> [Flowers]: The first two, they came out, I don't know how[.] Then they pulled two more out of me a couple days later. Or a day later, whenever it was.
> [State]: And who was that?
> [Flowers]: The nurse.
> [State]: *Why didn't you have the nurse down here to testify about that?*
> [Flowers]: I don't know –

> [Defense counsel]: I object, Judge –
> [The Court]: – Sustained –
> [Defense counsel]:– and asked [sic] that they be stricken.
> [The Court]: That question will be stricken from the record and the jury is instructed to completely disregard it.

*Id.* at 224-25 (emphasis added). Flowers was taken to the hospital two days after being booked because of pain in his arm. Flowers testified that an x-ray of his arm revealed it was broken in eight places.

[7] During closing arguments, in discussing the progressive force officers used to subdue Flowers, the prosecutor stated,

> What does the evidence show? It shows that there was escalation of force used[.] First, it was voice commands[.] That didn't work, the next level, physical restraint. . . . That didn't work, pressure points[.] That didn't work. Then you go to nerve strikes. Again, painful reactions didn't work. Finally, tasers, two tasers didn't work. The drive stuns didn't work. Finally had to do a deployment of barbs, and that did work for a little bit. Took him down to the ground but didn't keep him there. [What] finally got some compliance, was pepper balls. Was he shot immediately with pepper balls? No[,] warning shots were given and finally he gets popped and he starts to comply. . . . So, there is not excessive force that was used. An escalation of force, yes. But that escalation of force was caused by the defendant's words and actions. . . . Now, he said they broke my arm. That this is proof that they used excessive force. Now, all the witnesses testified that they never heard, never received any complaints from him while they were dealing with him, that he was injured or in pain. . . . None of these claims is an actual defense to his crimes. *There is not an instruction in there, the 23, 25 instructions that says if the defense proves that there's excessive force, he's not guilty. If the defense proves that the corrections officers over reacted, he's not guilty.*

> *There is nothing like that.  Even if they did, even if you believe they did use excessive force, even if you believe they did over react, that does not excuse his behavior.  So, don't think about it, don't worry about it, it's not an issue.*

*Id.*, Vol. 3 at 19-21 (emphasis added).  Flowers did not object during the State's closing argument.

[8]  The jury found Flowers guilty of battery and disorderly conduct but not guilty of intimidation.  The trial court sentenced Flowers to concurrent terms of eighteen months for battery and 180 days for disorderly conduct.[5]  Flowers now appeals his battery conviction.

# Discussion and Decision

## I.  Standard of Review

[9]  Flowers argues the State committed prosecutorial misconduct on two occasions during his trial that made a fair trial on the battery charge impossible.

[10]  As our supreme court has explained,

> [i]n reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to

---

[5] At the conclusion of the trial, the trial court acknowledged the possibility of alternative misdemeanor sentencing on the battery conviction, *see* Ind. Code § 35-50-2-7(c), but after reading the pre-sentence investigation report and hearing evidence and argument presented at the sentencing hearing, entered judgment of conviction as a Level 6 felony as charged.

which he or she would not have been subjected otherwise. A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by *the probable persuasive effect* of the misconduct *on the jury's decision* rather than the degree of impropriety of the conduct.

*Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (quotations and citations omitted).

[11] To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial. *Sciaraffa v. State*, 28 N.E.3d 351, 358 (Ind. Ct. App. 2015), *trans. denied*. Failure to comply with these requirements forfeits a prosecutorial misconduct claim. *Delarosa v. State*, 938 N.E.2d 690, 696 (Ind. 2010). Flowers concedes he did not properly preserve his claims of prosecutorial misconduct for appeal. *See* Brief of Appellant/Defendant at 19. Thus, to prevail on appeal, Flowers must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. *Booher v. State*, 773 N.E.2d 814, 818 (Ind. 2002).

[12] Fundamental error is an extremely narrow exception to waiver, and a defendant faces the heavy burden of demonstrating that the alleged error was so prejudicial to his rights that it rendered a fair trial impossible. *Jerden v. State*, 37 N.E.3d 494, 498 (Ind. Ct. App. 2015).

In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." The element of such harm is not established by the fact of ultimate conviction but rather "depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled."

*Ryan*, 9 N.E.3d at 668 (citations omitted). To determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible, we look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions. *Jerden*, 37 N.E.3d at 498. Review for fundamental error is not intended to grant the defendant a second bite at the apple; it is meant to permit appellate courts "to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred[.]" *Ryan*, 9 N.E.3d at 668.

## II. Prosecutorial Misconduct

### A. Cross Examination

[13] Flowers argues the State's question about why he did not call the jail nurse to corroborate his version of events surrounding the deployment of the taser during his intake constituted prosecutorial misconduct in that it suggested to the jury that Flowers had the burden of proof. Flowers did immediately object to

the question and the trial court sustained the objection, struck the question from the record, and admonished the jury to "completely disregard it." Tr., Vol. 2 at 225. The fact that Flowers now raises this as an issue implies that he does not believe the admonishment cured the error; yet, Flowers did not move for a mistrial at the time. This is not a case where such a request would necessarily have been futile; the trial court agreed with Flowers that the State's question was objectionable. If Flowers believed the admonishment was insufficient, it was incumbent upon him to request a mistrial at that time. Having failed to do so, he failed to preserve the issue for appeal and, as stated above, can only succeed if he proves both that the prosecutor committed misconduct *and* that the misconduct constituted fundamental error. *Booher*, 773 N.E.2d at 818.

[14] "It is improper for a prosecutor to suggest that a defendant shoulders the burden of proof in a criminal case." *Stephenson v. State*, 742 N.E.2d 463, 483 (Ind. 2001), *cert. denied*, 534 U.S. 1105 (2002). Flowers asserts that the prosecutor "utilized impermissible impeachment to raise in the minds of jurors a forbidden conclusion: that Flowers *should have* called a specific witness if he wanted to establish sufficient credibility to be believed by the jury" and thereby "subverted" the fact that "the burden of proof is always upon the State[.]" Br. of Appellant at 17.

[15] We consider alleged misconduct in the context of all the relevant information given to the jury to determine whether the misconduct made a fair trial impossible. *See Jerden*, 37 N.E.3d at 498. The State asked only this one question suggesting Flowers could have called a witness to corroborate his

version of events, and the event Flowers was relating at the time was not directly relevant to any of the charges – he had already hit Officer Combs by the time he was tased. Statements shifting the burden to the defendant "may be cured by the trial court advising the jury that the defendant was not required to prove his innocence or to present any evidence." *Stephenson*, 742 N.E.2d at 483. The record here indicates that in both its preliminary and final instructions, the trial court advised the jury:

> Under the law of this State, a person charged with a crime is presumed to be innocent. . . . To overcome the presumption of innocence, the State must prove Mr. Flowers guilty of each element of the crime charged beyond a reasonable doubt.

> Mr. Flowers is not required to present any evidence to prove his innocence or to prove or explain anything.

Defendant-Appellant's Appendix, Volume II at 110 and 129; *see also* Tr., Vol. 2 at 12; Vol. 3 at 9. We presume the jury follows the instructions it is given. *Thrash v. State*, 88 N.E.3d 198, 205 (Ind. Ct. App. 2017). Therefore, even assuming the State's question improperly suggested Flowers had the burden of proving anything, such instructions are sufficient to cure any harm that might have been caused. *See Bryant v. State*, 41 N.E.3d 1031, 1036 (Ind. Ct. App. 2015) (holding, where trial court denied defendant's motion for mistrial alleging State's question on cross-examination of a defense witness improperly shifted the burden of proof, that "to the extent the prosecutor's comments were arguably improper, any small potential of harm caused thereby was cured"

when prosecutor mentioned the State's burden in closing argument and trial court properly instructed the jury on the burden of proof).

[16]     Flowers concedes caselaw says proper jury instructions about the burden of proof can cure any misconduct and further concedes that the trial court gave such instructions here. *See* Br. of Appellant at 18. But he argues there is a "crucial difference" between those cases and his: prior cases holding jury instructions cure the error were decided in the context of the burden-shifting statement being made during closing argument whereas here, the "illicit inference was conjured up during cross-examination of the defendant" and therefore the error is "much more egregious" because it occurred during the presentation of evidence. *Id.* If this is in fact a difference at all, the trial court promptly addressed the issue during the cross-examination by sustaining Flowers' objection to the question, striking the question from the record, and admonishing the jury to disregard it. A proper admonishment is presumed to cure any error. *Emerson v. State*, 952 N.E.2d 832, 840 (Ind. Ct. App. 2011), *trans. denied*.

[17]     The trial court correctly instructed the jury twice about the burden of proof and further instructed the jury before the presentation of evidence that the court "[o]ccasionally . . . may strike evidence from the record after you have already seen or heard it. You must not consider such evidence in making your decision." Defendant-Appellant's App., Vol. II at 113; Tr., Vol. 2 at 13. Nonetheless, Flowers argues the trial court sua sponte should have also reminded the jury of which party has the burden of proof in that moment. *See*

Br. of Appellant at 20. However, the trial court "is not required to take an active part in the trial of the cause to assist or to override counsel[.]" *Henderson v. State*, 271 Ind. 633, 636, 395 N.E.2d 224, 227 (1979). "It is the duty of a trial judge to preside in a strictly impartial manner and to refrain from undue interference and participation in the proceedings." *Id.* The trial court struck the question and admonished the jury; it was not required to do more in the absence of a request from Flowers to do so.

[18] Although the State's question was pointed, in the context of all the testimony, the issues before the jury, and the admonishment and instructions the jury was given, we cannot agree with Flowers that the State's one question had "such an undeniable and substantial effect on the jury's decision that a fair trial was impossible." *Ryan*, 9 N.E.3d at 668.

## B. Closing Argument

[19] Flowers also argues the prosecutor committed misconduct by misstating the law of self-defense in his closing argument by "essentially convey[ing] to the jury that Flowers did not have a right of self-defense . . . even if the officers used excessive force." Br. of Appellant at 13. Again, conceding no objection was made during the State's closing argument, Flowers argues that the misconduct constituted fundamental error requiring the trial court to step in.

[20] Whether or not the prosecutor correctly stated the law of self-defense in response to excessive force by law enforcement, the comment was not fundamental error for the basic reason that self-defense was not at issue in this

case.  Flowers was charged with battery on a public safety official.  He did not contend that he hit Officer Combs in self-defense; in fact, he claimed the *opposite* of self-defense, that is, that he did not hit Officer Combs at all.  *See* Br. of Appellant at 15 (acknowledging that the defense chose not to assert a theory of self-defense because Flowers denied any alleged battery).  In commenting on the factual circumstances of the case, the prosecutor correctly pointed out that the jury had not been instructed on self-defense because Flowers did not *claim* self-defense.  "Hoosier citizens [may] enjoy a vibrant right of self-defense" as Flowers claims, *id.* at 13, and may have the right to defend themselves from the unlawful actions of a public servant, *see id.* at 14 (citing Ind. Code § 35-41-3-2(i)(l)), but they must assert that right.

[21]  Flowers cites *Castillo v. State*, 974 N.E.2d 458 (Ind. 2012), for the blanket proposition that "a prosecutor's erroneous misstatement of the law rises to the level of misconduct."  *Id.* at 13.  In *Castillo*, the prosecutor told the jury that in considering a sentence of life without parole, it should not compare the mitigating and aggravating factors when Indiana law expressly *requires* the jury to make that comparison.  974 N.E.2d at 468 (citing Ind. Code § 35-50-2-9(l)).  Therefore, the prosecutor's statement constituted misconduct because it urged the jury to act contrary to law.  *Id.* at 469.  Moreover, the misconduct was fundamental error because it placed the defendant in a position of grave peril to which she should not have been subjected and presented an "undeniable and substantial potential for an erroneous jury sentencing recommendation."  *Id.* at 470.  Here, the prosecutor's statement could be viewed as urging the jury *not* to

act contrary to law, given that it had not been instructed on self-defense. The prosecutor's statement did not place Flowers in a position of grave peril; rather, it placed him in exactly the position he chose, that is, allowing the jury to determine whether to believe the officers' version of events or his.

[22] Therefore, we hold the State's comments during closing argument did not constitute misconduct, let alone fundamental error. *See Ramsey v. State*, 853 N.E.2d 491, 501 (Ind. Ct. App. 2006) (holding comment made during closing argument was permissible comment on the evidence and not prosecutorial misconduct), *trans. denied*.

# Conclusion

[23] Flowers has failed to prove that the prosecutor committed misconduct or, if he did, that any such misconduct constituted fundamental error. Accordingly, his conviction for battery on a public safety official is affirmed.

[24] Affirmed.

May, J., and Vaidik, J., concur.