**Robert Wendell DUNCANSON, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 45S00–8606–CR–551.

Supreme Court of Indiana.

June 24, 1987.

Michael W. Bosch, Bamber, Stodola & Bosch, Hammond, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant for the crime of Robbery. The jury also found that he was an habitual offender. The trial court therefore enhanced appellant's sentence to a total of forty-five (45) years.

The facts are: On the evening of February 16, 1985, Janet Niksic was working as a cashier at DeLock's Liquor Store in Hammond, Indiana. At approximately 9:30 p.m., Ginelle Willmott entered the store followed a few seconds later by appellant. Willmott came directly to the counter and asked to buy cigarettes. Appellant went over to the beer cooler. Willmott gave Niksic a dollar for the cigarettes. When Niksic opened the cash register to make change, appellant approached the counter with a knife in his hand. Appellant said, "Don't close the drawer. This is a robbery." While appellant was getting the money out of the drawer, Willmott left the store. After taking approximately $80.00 from the drawer, appellant also left.

On the 1st of March 1985, Detective Williams of the Hammond Police Department received a telephone call from the Calumet City Police Department in Illinois. They advised him they had two people under arrest who had information concerning crimes that occurred in Hammond. Detective Williams went to Calumet City and talked to David Mork and Catherine Carter regarding crimes in Hammond, including the robbery of DeLock's Liquor Store. Mork and Carter told Detective Williams that they were at appellant's residence and that appellant told them he and Willmott committed the robbery at DeLock's Liquor Store. He told them Willmott posed as a customer and when the cash register was opened appellant demanded the cash.

After talking to Mork and Carter, Detective Williams went to the police records in an attempt to verify the crimes which were related to him. He found that the records confirmed the crimes. Mork also informed Williams where appellant lived and the type of vehicle he drove. Detective Williams then passed this information to the members of the department investigating the DeLock robbery.

On March 5, 1985, at approximately 2:00 p.m., Corporal Terry Ballentine of the Hammond Police Department, who was privy to the information above setout, was patrolling in the area of 550 Florence Street in Hammond, Indiana. Appellant's residence was located at that address. Corporal Ballentine saw a person sitting in a 1971 green Chrysler directly in front of appellant's residence. Because of his prior information concerning the robbery, Corporal Ballentine "took special notice that there was someone sitting in that car in front of that residence." That person, later identified as Mark Kochevar, got out of the car and went to the front door of appellant's residence. When Kochevar entered, Corporal Ballentine noticed that appellant was in the residence.

At that point, Corporal Ballentine radioed for assistance. When other police units arrived, they contacted the Detective Bureau of the Hammond Police Department for further instructions. At that time, they were told not to make an arrest of appellant. Shortly thereafter, the other assembled units left the scene. Corporal Ballentine then circled the block and on his

return he noticed that Kochevar's vehicle had its engine running and that there were no license plates on the car. Corporal Ballentine then parked his squad car where he could observe the vehicle in question.

After a short wait, three people, later identified as appellant, Kochevar and Willmott, came running from the residence. They all jumped into the car and attempted to drive off with appellant driving. However, at this time, Corporal Ballentine stopped the vehicle and arrested the occupants. Kochevar and Willmott were arrested for public intoxication and appellant was arrested on probable cause that he had committed the robbery of the DeLock's Liquor Store.

Upon arriving at the Hammond Police Station, appellant and Willmott were questioned about the alleged robbery. Before they were questioned, detectives interviewed Niksic, the victim of the robbery, who was shown eight photographs of females, one of which was Willmot. However, the victim could not identify Willmott in the photographic lineup. She was then shown a photographic lineup of eight males, one of which was appellant. She was able to identify appellant from the lineup.

After this session with Niksic, the detectives began to question Ginelle Willmot about the robbery. Prior to this questioning, Willmot signed a *Miranda* waiver form and then proceeded to make a statement implicating appellant and herself in the February 16 robbery of the Delock's Liquor Store. After Willmott had implicated appellant, the detectives began to question appellant about the same robbery. After executing a *Miranda* waiver form, appellant made an oral statement implicating himself and Willmott in the February robbery of the Delock's Liquor Store.

Appellant claims the trial court erred in denying his pretrial motion to suppress evidence. It is his position that the arrest was illegal; therefore, the statement made by Willmott, her testimony at the trial and appellant's statement made following his arrest are all the products of an illegal arrest and should have been suppressed.

■ Appellant argues that because the police department told Corporal Ballentine not to arrest appellant at the time he was inside his residence, the trial court should have held and this Court should hold that the arresting officer had no probable cause to arrest appellant. There is nothing in this record to indicate that the decision of the police department not to enter appellant's residence to effect an arrest was a choice based upon lack of probable cause.

■ However, at a later time, when Corporal Ballentine observed the parties leaving the home in haste in a car which had no license plate, he was faced with an entirely different situation in view of the prior information concerning appellant. A police officer may arrest a person without a warrant when he has probable cause to believe the person has committed a felony. *Fisher v. State* (1984), Ind., 468 N.E.2d 1365.

■ Probable cause exists when, at the time of the arrest, the arresting officer has knowledge of facts and circumstances which warrant a person of reasonable caution and prudence to believe that the person to be arrested committed the criminal act in question. *Green v. State* (1984), Ind., 461 N.E.2d 108. Whether there is probable cause for the officer to make an arrest, depends not upon the knowledge of the arresting officer alone but upon the collective information known to the law enforcement organization as a whole. *Suggs v. State* (1981), Ind., 428 N.E.2d 226.

■ When law enforcement officers rely on a tip received from a third source, probable cause may be established by verification of extensive facts which sufficiently demonstrate the reliability of the tip. *Randall v. State* (1983), Ind., 455 N.E.2d 916. As pointed out above, the Hammond Police Department had received information concerning appellant and Willmott, which information was checked out and found to be accurate according to the details as independently learned by the police department. The trial court did not err in finding that the arresting officer had probable cause to effect the arrest.

In support of his position, appellant cites *Taylor v. Alabama* (1982), 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314, wherein it was stated that a confession closely following an illegal arrest should be suppressed. To support its opinion, the majority in *Taylor* cites *Dunaway v. New York* (1979), 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 and *Brown v. Illinois* (1975), 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416. In each of these cases, it was held that the confession was obtained by exploiting the illegal arrest and that the affect of the illegal arrest had not been broken by any intervening event of significance.

However, in the case at bar, we have the intervention of the statement of Willmott implicating appellant in the robbery, the identification of appellant by the victim, followed by full *Miranda* warnings to appellant before he made his incriminating statement to the police. The case at bar is clearly distinguishable from the above-cited Supreme Court cases.

Appellant claims the trial court erred when it failed to grant his two motions for mistrial based on prejudicial testimony by Sergeant Miles. During cross-examination by defense counsel, the following exchange took place.

"Q Did you say anything, or did she say anything other than what is in her statement, or do you recall?

A Did we discuss anything besides what's in there?

Q Correct.

A Her being with him on other hold-ups."

On redirect examination by the prosecutor, the following exchange took place.

"Q You stated, Sergeant Miles, that Ginelle Willmott was concerned with Robert Duncanson. Did she express this is any words, and if so, what was she saying about this?

A She was worried about him going back to prison."

In each instance, following objection by appellant's counsel, the trial court admonished the jury to disregard the statement. On the second instance, where Officer Miles had stated that "[s]he was worried about him going back to prison", the trial court admonished the witness concerning his testimony. This Court will reverse a denial of a motion for mistrial only for an abuse of discretion by the trial court. *Dean v. State* (1982), Ind., 433 N.E.2d 1172. Not every error requires the granting of a motion for a mistrial. *Carman v. State* (1979), 272 Ind. 76, 396 N.E.2d 344.

Where the jury is admonished by the trial judge to disregard what has occurred at trial, the court's refusal to grant a mistrial is not reversible error. *Tinnin v. State* (1981), 275 Ind. 203, 416 N.E.2d 116. In the case at bar, the trial court promptly admonished the jury to disregard the answers given by Sergeant Miles. In addition to this immediate admonishment, the trial court gave final instructions to the jury to disregard any evidence of crimes other than that charged in the information. The trial court also instructed the jury that answers given by witnesses which were stricken were also to be disregarded. When the jury is properly instructed, we will presume they followed such instructions. *Tabor v. State* (1984), Ind., 461 N.E.2d 118. We hold any error which occurred as a result of the answers by the police officer was properly cured by the trial judge. There was no reversible error in the refusal to grant a motion for mistrial.

Appellant claims the trial court erred by allowing Willmott to testify for the State for the reason that she was not listed as a witness by the State and because she was a codefendant and defense counsel was not officially notified of the plea agreement entered into between Willmott and the State.

Appellant claims he was not aware that Willmott would be a witness at trial. However, in its response to discovery, the State listed as possible witnesses all persons named in the discovery materials. Among the discovery materials was the *Miranda* waiver and the statement of Willmott which was given to the police at the time she was arrested.

Appellant also states he was surprised by the plea agreement entered into between the State and Willmott. Appellant was served with a copy of the plea agreement on Monday, November 11. The trial did not take place until Thursday, November 14. Thus appellant had approximately three days to examine the agreement and possibly depose Willmott concerning the plea agreement. Further, we observe the trial court granted appellant's request for a continuance in order to depose Willmott. Under the circumstances, we can see no error in allowing Willmott to testify. *Cornett v. State* (1983), Ind., 450 N.E.2d 498; *Suggs, supra.*

Appellant claims he was denied his Sixth Amendment right to effective assistance of counsel, in that counsel was not afforded ample time and opportunity to interview Willmott prior to her testimony at trial. We have disposed of this argument in the preceding paragraph of this opinion.

Appellant also contends he was denied his Sixth Amendment right to effective counsel, in that the trial court denied him a continuance which was necessary to repair a deteriorated lawyer-client relationship. If we were to hold that every time a client and his lawyer disagree, that the lawyer is entitled to a continuance of the case, it would be difficult to bring cases to trial. Generally, there is a presumption that counsel is competent and that strong and convincing evidence is required to rebut that presumption. *Howell v. State* (1983), Ind., 453 N.E.2d 241.

An examination of this record shows that counsel was able to maintain a vigorous defense of appellant including his cross-examination of Willmott. He not only effectively questioned her about her statement following her arrest, but he further pointed out and questioned her about inconsistencies in her testimony as opposed to the testimony she gave at her deposition just prior to trial. He cross-examined her about her personal life which would impinge upon her integrity and he also effectively cross-examined her concerning her plea bargain with the State. We see nothing in this record to indicate that counsel rendered ineffective assistance to appellant.

Appellant claims the forty-five (45) year sentence imposed by the trial court is excessive considering all the circumstances surrounding this particular case. This Court will not review a sentence on appeal unless it is found to be manifestly unreasonable. *Williams v. State* (1979), 271 Ind. 408, 393 N.E.2d 149; Ind.R.App.Rev.Sen. 2.

In the case at bar, the trial court found that appellant had three prior robbery convictions. There is ample evidence in this record to sustain the trial court's sentencing of appellant to fifteen (15) years for robbery. The basic sentence of ten (10) years for a Class B felony was enhanced by the trial court for the aggravating circumstances of the case at bar. This fifteen (15) year sentence was enhanced by another thirty (30) years by reason of appellant's status as an habitual offender. We see no abuse of discretion of the trial court in the sentencing of appellant.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., concurs in result.